In re Homesite Holdings, LLC, K. Todd Curry, Counsel for Appellant Homesite Holdings, LLC, Michael Sobchowiak, Counsel for Appellees, SMDL, LLC, and T2, LLC, Christopher R. Nelson, Counsel for Appellee, Houshang Aframian. All right, good morning. So we've got two appellees in this matter, so you folks are going to have 15 minutes total. So you should think about how you want to split up your time, and you can let me know when it's your time to speak. But, Mr. Curry, you're up first. So why don't you let us know if you want to reserve any time for rebuttal? Yes, Your Honor, I would like to reserve five minutes, please. All right, thank you. Please begin. Thank you. Good morning, and may it please the Court. My name is Todd Curry, and I'm representing the Appellant Homesite Holdings, LLC. By way of overview, the Bankruptcy Court cared because it approved the sale of a real property without sufficient evidence that the optimal value for the property was being obtained. The property was sold for $338,000. There was not evidence to support that value. In addition, there was not evidence that what marketing efforts were undertaken to sell the property. The Court also cared by crediting $6 million of claims by SMDL T2 that were barred as a matter of law. The Court should have granted Homesite's motion for summary judgment as to those claims, and then the Court should have denied the sale motion at least at a minimum or at best because the motion was then premature. The Court also erred by finding good faith on the part of the purchaser, and the Court also erred by not granting reconsideration when Homesite presented to the Court evidence that the sale process was infected by inaccurate information submitted by SMDL T2. I would like to jump right to the good faith issue because I think that's really the most unusual aspect about this case. It's something we don't really see that often. There was substantial misconduct by the purchaser, SMDL T2, in connection with the sale proceeding. SMDL T2 represented to the Bankruptcy Court that there were all sorts of problems with Homesite's retaining wall, which was below their property. But on the other hand, they secretly told the California Coastal Commission something entirely different, which is that they wanted to do a new and different remedy to their property up above that essentially assumed that the Homesite wall was stable and would provide stability for this new so-called techo-mesh system that they wanted to install. This is going to your motion for reconsideration, right? Because this was not part of the record for the global settlement and sale motion that the Court granted, right? This was part of the reconsideration. That's correct, Your Honor. So what you need to really focus on then is why the Court erred in not reconsidering it in order for us to even think about this issue. Yes, and it was the misconduct by SMDL T2 that really, and this was discovered after the motion was granted, the misconduct that is, and by concealing in discovery this information that they had provided to the Coastal Commission, they essentially didn't even, what this showed was that they did not even believe what they were telling the Bankruptcy Court. That is, that the Homesite wall supposedly was unstable and needed to be replaced and was not worthy of providing support. So that, I think, is key evidence that was withheld. It was withheld in discovery. Homesite had propounded discovery that clearly covered this type of evidence. That was withheld. Then what they did— Counsel, wasn't the judges finding that all of this report was public record and could have been obtained by you much earlier than the time that you allege you did? That was one of the bases on which you denied the motion for reconsideration was it wasn't newly discovered evidence. And doesn't all of the things that you're suggesting that the report says depend upon an interpretation of the report by experts who then have to testify and be believed, and they, T2M or SMDL T2, contest that that is not exactly how it should be interpreted? And so those are factual questions. I mean, isn't all that part of the problem that you face in this case? Well, the Bankruptcy Court did state that it felt that this was public information. This is not like a, say, a title dispute case where the parties can just look in the public record and find, you know, deeds recorded. This is information that was with the Coastal Commission. It is not just readily available online. My client found that, in fact, anything that was pending was not available unless you specifically knew to call the Coastal Commission and ask for something specific. We had covered this, we just thought, by propounding discovery that covered this area. This was deliberately withheld in discovery. Now, Your Honor raises the point about, well, does it make a difference? Does it require experts to tell us that it would have made a difference? Under Rule 60, we don't have to show, and it can often be impossible to show, well, what would have happened had we had the information. So I'm referring to the fact that you're suggesting that the report itself establishes that they knew and represented something false to the court. And that requires evidence that, in fact, you can interpret it that way. They deny that it's interpreted that way. They aren't suggesting that they are using the retaining wall in the same way that you're suggesting. They aren't suggesting that what they did was contrary to what they represented. Those things make the question of whether she made the correct decision not as obvious as you're suggesting it would be in the absence of those problems. I understand that, Your Honor, and we're not required to show that at this point. What we're required to show is that what they did impaired our ability to present our case. And what they blocked us, what they blocked Homesite from doing, was presenting the fact that they didn't even believe what they were telling the court as far as the stability of that wall. And the bankruptcy court credited their argument and found, as a way to get around the permanent nuisance three-year statute of limitations, that there was a question about whether the wall, in fact, was stable. So it goes right to the heart of the case. And so, again, we don't have to show at this point that it would have made a difference. What we have to show is that it blocked us, and what it blocked us from doing was conducting further discovery. It blocked us from having our experts look at this. It blocked us from getting to depose their experts on this very issue as to whether or not they truly believed that that Homesite wall was unstable. And that, I think, is the essence of the Rule 60 motion here, is that it blocked us from presenting the case that we would have or could have presented. And I think it's important to emphasize what clearly was false that they told the court. Number one, what they did is they told the court that they had submitted a September application when, in fact, they had submitted a superseding October application that we discovered by accident with the Coastal Commission. So that was one. So they had switched that out and used the October application. The other thing they told the court, the bankruptcy court, is that they were pursuing a 2019 repair bid of around $3.8 million when, in fact, secretly with the Coastal Commission, they were pursuing a wholly new tech-o-mesh system dated 2022. Now, why would they tell the bankruptcy court they were pursuing the 2019 remedy when, in fact, they had abandoned that remedy and they were pursuing a 2022 tech-o-mesh system? Again, do we have to prove at this stage that that would have made a difference? No, and it's hard to do that without conducting the discovery that this would have led to. And so I think that's the key under the Rule 60 analysis. Counsel, you know, under 60B, you're going to have to show that this newly discovered evidence could not have been discovered with reasonable diligence. Tell me why Judge Mann was wrong in concluding that you couldn't have discovered, that you could have discovered this with reasonable diligence. Your Honor, because under Judge Mann's point of view, we would have had to have checked with the Coastal Commission on a daily or weekly basis to see if something new was being filed with them. That's simply not practical. And so what we did, and this is what discovery is for, is we propounded discovery that we believe and, in fact, did cover this area, any contacts with third parties about these properties and the changes to the properties. And we relied on the discovery statutes and the obligation to separate them. You say on a daily basis, though. The report that you're referring to that you're posing aside, it wasn't filed a day before you discovered it. That's true. How long was it there? The first one apparently was filed in September. The second was filed in October, and we were before the court in January. I think we discovered it in February. So I think that's what the timing was. So it's not a daily basis. You wouldn't have had to do it. You could have almost done it on a quarterly basis. Perhaps, perhaps. And I guess the question is, are we entitled to rely on our discovery, and are we entitled to rely on the representations being made in papers filed by SMDLT2 that they're pursuing the old repair, declarations under penalty of perjury? Can we rely on those, or do we have to constantly be checking quarterly or whatever it is to see if they were lying or making false representations about what, in fact, they were pursuing? So I think that really taints the sale process here. But this isn't really a sale, is it? It's a global settlement. It involves multiple parties with claims against the estate who are either modifying their claims or waiving portions of them. It isn't the estate recovering money by settling a claim it has against somebody else, which is the typical sale, 363, in a 90-19 scenario. That's not what's going on here. Well, I believe there was cash generated for the estate as well out of the $338,000. I appreciate that, but the sale is only a small component of an overall global settlement amongst the Framion, T2, and SMDL, the trustee. So it's not just limited to a sale of the real property. That's not what's just occurring here. There were settlements. It's an overall settlement. Yes, there were settlements as well, and from my client's perspective, though, the sale was the bigger component because my client's opinion of value was $3.8 million. The trustee, and that brings up the other issue here, another issue here, which is was there sufficient evidence of the $338,000 sale price to support that? And the trustee submitted no evidence on that point, did not explain what marketing had taken place. He just said, well, I tried to market it. But that's because you want to focus on the sale. Talk about the global settlement and how that fell into the – how she abused her discretion and how you addressed it in your briefing on the global settlement resolution. Explain that to me, not just that she doesn't qualify under 363 and you think the sale price is too low. Well, with respect to the settlement, the bankruptcy court should have granted the summary judgment motion based on statute of limitations, for example. And therefore, when we look at the element of the factors for a settlement, we look at – we have to look at the merits of the litigation, the likelihood of success. And our analysis is that this claim clearly was barred by the three-year statute of limitations for permanent nuisance. It also was barred on the three-year – even if this were a continuing nuisance, we have the problem of the only damages recoverable by the plaintiff here would have been damages occurring in the last three years before the suit was signed. So that was 2018 to 2021. There was no evidence whatsoever, and again, it's plaintiff's burden to provide this. There was no evidence as to what those damages were. So the court's analysis of the likelihood of prevailing in the litigation was flawed in that regard as a matter of law. Because she rejected your arguments on summary judgment, she had a sufficient basis to find that there was a dispute that would require extensive further litigation. And in fact, your client suggested that if they could have got their bid successfully, they would have just continued the litigation against T2NSMDL in the future. That's what he anticipated doing. So this global settlement wasn't just based on some theory that she didn't agree with. She saw this as a long-haul situation that would take years to resolve that had been years in the making and hadn't yet resolved, right? Well, we didn't see it that way, Your Honor, because we saw it as it was a clear case that the claims were in fact barred and should not have been credited at all. So there would not have been continued litigation going forward had the summary judgment been granted. I'd like to reserve the rest of my time, please. Thank you. All right, Mr. Sokoviac and Mr. Nelson, who's going to speak first and how are you going to divide your time? Excuse me, Your Honor, I've been sick. I will reserve five minutes for Mr. Nelson. Okay. May it please the Court, Michael Sokoviac appearing on behalf of appellees SMDL and T2. This appeal concerns the sale of landslide property requiring slope failure remediation. The Bankruptcy Court-approved settlement resolved three years of bankruptcy litigation, removed dangerous property from the bankruptcy estate, and put the bankruptcy trustee in position to close the case. The Bankruptcy Court's orders of appeal are well-reasoned and detailed, totaling nearly 40 pages in length. They should be affirmed. I'll first discuss the settlement and sale motion. No one contends the Bankruptcy Court applied to a correct legal standard. The issue on appeal is whether the sale price for the property is factually supported, even without a precise valuation due to landslide risks. The Bankruptcy Court determined that value is a disputed fact and the property is worth between next to nothing and appellant's $3.8 million figure. We don't get there, though, unless we get past the good faith issue, though, if we're talking about the sale. Isn't that correct, Mr. Sokoviac? I'm sorry, I don't fully understand. Well, if we're just looking at it as a $3.63 sale and you've got a good faith finding, all we can review on appeal with respect to that is the good faith, right? The sale price says we can't get to it unless we find that there was an error in determining good faith. Correct. And we believe that the court correctly determined that there was a good faith purchase here. Right, but what about Mr. Curry's argument that your client hid evidence regarding the stability of the hillside and that you were pursuing a different route? Oh, yes, Your Honor. We don't view it as hiding evidence. It was an oversight. It was a failure to supplement discovery responses. There was nothing nefarious about it, but the court denied the motion for reconsideration and it was correct that the landslide needs a repair of some type and correctly found that the parties subverge on the type of repair needed and who is liable. It gets directly to the issue that Mr. Curry raises now, so it doesn't resolve Section 363 on good faith finding. The Bankruptcy Court correctly noted that SSDL and T2's incomplete document production and the evidence submitted by appellants to the court in support of the motion did not change this critical fact. The Bankruptcy Court was correct in finding appellants' concealment argument unpersuasive. As the Bankruptcy Court stated in its order denying reconsideration, Home Site, in effect, asked the court to ignore all contrary evidence in the record that both parties are liable for some extent for the landslide. The Bankruptcy Court was concerned about public safety and found the evidence presented confirms the court's reasoning for entering the orders in the first place. And I think it's not true to say the court was misled by the discovery oversight. All right. Proceed. Thank you, Your Honor. I was talking about the sale price and the Bankruptcy Court reasonably concluded that a precise value of the property could not be determined without resolution or disputed factual issues as the scope of the landslide, the cost to remediate, and respective liabilities of the parties. And the settlement, as Judge Gadd noted earlier, resolves extensive and uncertain litigation. And as part of the settlement terms, SSDL and T2 paid $488,000. Now, Mr. Curry has put that number significantly lower, and we address this in our briefing, and it overlooks that we had made a $150,000 loan to the estate that is not accounted for, that we've waived that. The Bankruptcy Court did not abuse its discretion in approving the sale price. On the other hand, appellate's contention that property is worth $3.8 million is objectively illogical and without support. It is disingenuous for appellates to argue the sale price is too low when the only other offer was appellate's $50,000 overbid that was deemed less favorable by creditors. The minimal overbid about is strong evidence of the property value. But in fact, didn't the judge struggle with the overbid because she didn't know how to compare what the $50,000 would mean when all of the other components of the settlement weren't addressed by the overbid? Yes, that's exactly true. The overbid was designed to perpetuate the litigation. At the same time, only increasing the amount paid to the estate and to the Sir Aframian $25,000. Both creditors decided that that was not worthwhile to them and that they deferred the SMDL T2 proposal. I'd like to discuss the reasons for the bankruptcy court granting the sale motion. The settlement and sale resolve complex litigation, avoids further landslide risk faced by the estate and prevented cash to creditors. Appellants incorrectly conclude the settlement cannot be approved if the motion for summary judgment is granted. We think the bankruptcy court's denial of the motion for summary judgment is not issue determinative for this appeal. Therefore, the bankruptcy court could have approved the settlement and sale even if it had granted appellant's motion for summary judgment. The bankruptcy court identified no fewer than three reasons for granting the sale motion that are independent of the motion for summary judgment. First, the bankruptcy court discussed in its challenge orders that the trustee used excellent business judgment in seeking approval of the settlement and sale, which shields the estate from potential liability from the landslide risk. The court discussed, quote, alarm about the prospect of the landslide falling even more and that waiting will exacerbate the problem. Second, the Chapter 7 process worked here. By resolving the $1.2 million Aframian lien necessary for sale of the property and enabling the resolution of a documented hazardous landslide condition, appellants try to minimize this important point. The property would remain unmarketable without the settlement approved by the bankruptcy court. There would be no agreement in Mr. Aframian. There would be no ability to sell the property. Third, the bankruptcy court found that approving the settlement avoids more litigation and the risk the estate will be further administratively insolvent. The only competing proposal was more expensive litigation and the case remaining open for an indefinite period. Creditors showed a clear preference for the settlement with S&DL T2. The bankruptcy court expressed that the motion for summary judgment was a valuable exercise for determining the potential range of value for the property, but to say the settlement would not be approved if the motion for summary judgment was granted is simply not supported by the record. I think I'll reserve the rest of the time for Mr. Nelson. Thank you. I don't know if the court has any questions. No questions for any Mr. Judge Corbett? All right. Mr. Nelson. Thank you, Your Honor. Good morning and may it please the court. I represent a secured creditor in Napoli, Bhushang Aframian. I think I would just go straight into actually discussing what Judge Gann mentioned, which is that when we look at this sale, and if you look at the sale in the context that it's just a vacuum of the property value itself, you're not really paying attention to what the court was considering as a global settlement and also really what was kind of driving the entirety of the motion, including 363 and Rule 9019 aspects as well. I think one of the biggest pieces of semantics we've heard here is that there wasn't sufficient value or there wasn't optimal value of the property. That's not the correct question. Semantically, the question is whether there's optimal return for creditors of the estate. And the settlement, which includes certainly discounts on claims, must be factored into the price under 363. In this case, my client had a $1.2 million claim that had ballooned quite a bit based on interest. The fact of the matter is that claim still accrues. It's still going to be sitting there, and it's still going to be a serious impediment to the administration of the estate. And so because of that, when we look at the overall considerations for a settlement, the fact is the bankruptcy court isn't required to sit there and conduct a big trial. All she needed to do was canvas the issues and figure out what would be a good way to settle things efficiently because we're not really interested in spending a lot of money litigating further cases. This thing had been dragging on for years. And so the fact is I think all of the creditors, at least in their consideration, were heavily considering the fact that there was more litigation being promised and no certainty through a settlement with the debtor and the debtor's principal. However, SMDL and T2 offered certainty, and that was something that was very important to all the creditors of the estate, particularly my client, as expressed in its briefing. So I think here the court properly canvassed all of the creditors. It considered all of the factors that go into pricing. The value of the property itself was not the sole consideration of 363 or 9019 motions. And frankly, not bringing up my client's point of view as the single largest creditor of the estate was a pretty serious oversight by the appellant because we are really the most important party to be considered, at least as this canvassing process is concerned. We offered the greatest value through discount of anyone. And the fact is someone came in and wanted to buy this property that my client, under its consideration, which under the AC factors must be considered, my client's consideration was that that offer was the best offer and represented a fair value. So with that, I would just open myself to questions if the court has any. So in your view, you know, it looks like the appellant is saying the sale is the driver here of this transaction, right? But your view is that it really was all about a settlement. Is that correct? Well, I would say that both things are important. However, the settlement is a huge price consideration. And if we consider just based on quantity alone, which certainly was important to the bankruptcy court, the amount of savings to the estate by settling the claim with the Framion dwarfs any other number being offered either through overbid or, you know, cash or anything else. And the fact is my client didn't see a more attractive offer and therefore took the one that he felt was best. But that is part of the sale. Counsel, also what you're suggesting is the trustee used his business judgment. The trustee was concerned about the potential liability of the estate if something adverse were to happen in the interim, that there was years of more litigation potentially before any resolution, irrespective of if Mr. Cartwright got it or if he continued to fight with the other parties. It would go on for a long period of time. And the sale price was something that was created as a result of what money needed to transpire, to be transacted in order to accomplish what the overall settlement was trying to achieve and transferring the property away so that the estate didn't have any further liability, right? That's exactly correct, Your Honor. And what I would also say is just, you know, this is a Chapter 7 bankruptcy of all the things that can be melting ice cubes of possible returns. This is one. And so when we're talking about some real risks to any marketability of the property, even from someone who is interested because they have a unique interest in settling the estate's case, the fact is that making that settlement go away or trying to scare away that possible settlement from my client's point of view is a detriment to the estate. So that is something that was very, you know, frankly we would probably bundle that into a third very important consideration that the bankruptcy court, you know, obviously enumerated in her reasons for granting the motion. All right. I don't have any further questions. Anybody else?  Then I see the rest of my time. All right. Thank you, Mr. Nelson and Mr. Subcobiak. Mr. Craig, you've got about a little bit less than two minutes. Thank you. I will be brief, Your Honors. The Fitzgerald case, a case we cited at page 24 of our opening brief, it says it's not enough to simply satisfy administrative and unsecured claims in a case. That's not a sufficient analysis. And that seems to be what Mr. Nelson is supporting is, well, all we had to do is take care of these claims. We believe that does not excuse failure to support the ultimate sale price here with evidence regarding what efforts were undertaken to market. Why was this property allegedly worth zero, according to the trustee? We were never told. There was never any evidence to support that. And I disagree with Mr. Nelson. The issues were not all canvassed here. On the issue of continuing nuisance, crucial issue, because the only way to get around the three-year statute of limitations on a 2005 landslide and a 2021 litigation filing, the only way to get around that three-year statute is to find a continuing nuisance for the possibility of that. In order to get there, you have to conclude that the repair costs were reasonable in relation to the value of the property. The bankruptcy judge never addressed the issue, never made a finding on the issue. And so what we're left with is the permanent nuisance concept in a three-year statute. Why is that important? Because the driving force behind this whole bankruptcy and why this case was difficult to resolve was crediting the claims of SMDL-T2, which were $6 million. If those claims were given credit, the estate was insolvent no matter whose value you used. But if the summary judgment were granted, as a matter of law, as we claim should have been done, that claim disappears, the case becomes court, and it couldn't be resolved. I believe my time is up. Happy to answer any questions. Any questions? No? All right. Thank you very much. This matter is submitted.
judges: Brand, Gan, and Corbit